**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

APPROXIMATELY $659,990.83 IN               Case No. 07-C-0264
  UNITED STATES CURRENCY IN
  TD AMERITRADE ACCOUNT
  ENDING IN NUMBER 0920 HELD
  IN THE NAME OF JOHN K. PERRY,

    Defendant.

JOHN K. PERRY,

    Claimant.

## DECISION AND ORDER

### BACKGROUND

Plaintiff United States of America filed a Verified Complaint for Civil Forfeiture in Rem on March 19, 2007, seeking the forfeiture of $659,990.83 in United States currency seized from a TD Ameritrade account held in the name of John Perry. The United States alleges that the currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it was involved in a money laundering conspiracy or represents currency traceable to real property that was involved in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h).

On April 13, 2007, John Perry filed a verified claim with respect to the seized Ameritrade funds. On May 3, 2007, Perry, the claimant, filed his answer to the United States' complaint. Subsequently, the government filed a motion to stay this civil case pursuant to 18

U.S.C. §981(g). On July 27, 2007, the claimant filed a motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b) and Rule G(7)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions on the grounds that the court lacks subject matter jurisdiction in this case. The United States opposes the claimant's motion. The motions are ready for resolution and will be addressed herein.

The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

## **MOTION TO DISMISS**

In moving to dismiss, the claimant asserts that the complaint fails to allege or properly establish a single, overarching conspiracy which includes him and which involves acts or omissions occurring in the Eastern District of Wisconsin. Therefore, he asserts that the court lacks "subject matter jurisdiction" in this case. (Memorandum of Law in Support of John K. Perry's Motion to Dismiss [Claimant's Memorandum] at 2). Specifically, he contends that the facts alleged by the government show two similar, but separate and distinct, conspiracies involving Tom Buske, not a single conspiracy. The claimant further asserts that the government has not demonstrated the necessary inter-relationship between the alleged Wisconsin/Illinois conspiracy involving Buske and Milton Morris and the alleged Illinois/Missouri conspiracy involving him and Buske.

The claimant states that the affidavit of Judi K. Ricchio, Special Agent with the Internal Revenue Service (IRS), Criminal Investigation Division, filed in support of the verified complaint states that Tom Buske, the owner of an Illinois-based trucking company, conspired

- 2 -

Case 2:07-cv-00264-PJG   Filed 03/20/08   Page 2 of 12   Document 32

with Morris, the director of transportation for S.C. Johnson Company located in Racine, Wisconsin, to commit honest services fraud and money laundering in the Eastern District of Wisconsin. The claimant further asserts that, based on the verified complaint, Buske, simultaneously, but separately, allegedly conspired with the claimant to deprive Ford Motor Company in St. Louis, Missouri, of the honest services of its employee and to launder proceeds of that fraud. The claimant was manager of material planning and logistics at the Ford Motor Company, St. Louis Assembly Plant at the time. The claimant acknowledges that the acts and/or omissions relating to the Buske/Morris conspiracy occurred in the Eastern District of Wisconsin. He disputes the government's contention that the complaint and affidavits properly establish a single, overarching conspiracy which includes him. In addition, he claims that jurisdiction in a given case depends upon the facts as they appear when the complaint is filed.

In opposing the motion, the government asserts that the verified complaint and attached affidavits of Special Agent Ricchio establish that both venue and jurisdiction are proper in this district. The government contends that this forfeiture action arises out of a single, overarching conspiracy with Tom Buske at its hub and that the claimant and Morris participated in this conspiracy. It asserts that the facts are sufficient to show that Buske was operating a single conspiracy with a hub-and-spoke structure and that acts to further this conspiracy occurred in the Eastern District of Wisconsin. Therefore, the government states that since alleged acts of the overall conspiracy occurred in this district, any proceeds involved in the overall conspiracy would properly be subject to in rem jurisdiction in this district. Accordingly, the government maintains that the claimant's motion to dismiss should be denied.

- 3 -

The government has submitted a third affidavit of Special Agent Ricchio regarding jurisdictional facts along with its brief opposing the claimant's motion.[1] When considering a jurisdictional challenge, a court may receive and weigh affidavits. O'Hare Intern. Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir. 1971) see also, Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . .the court may inquire by affidavits of otherwise, into the facts as they exist." [internal citations omitted]). Therefore, the facts presented in the additional affidavit may be considered when addressing the claimant's motion.

## **ANALYSIS**

The plaintiff bears the burden of demonstrating the existence of jurisdiction when a defendant moves to dismiss the complaint on jurisdictional grounds. Purdue Research Foundation v. Sanofi-synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003) (addressing in personam jurisdiction). Normally, on review of a motion to dismiss, all the well-pleaded allegations in the complaint are taken as true. Hyatt Intern. Corp. v. Gerardo Coco, 302 F.3d 707, 713 (7th Cir. 2002) (addressing in personam jurisdiction). When a district court rules on a defendant's motion to dismiss for lack of jurisdiction based on the submission of written materials without benefit of an evidentiary hearing, the plaintiff need only make a prima facie case of jurisdiction. Purdue Research Foundantion, 338 F.3d at 782; Hyatt Intern. Corp., 302 F.3d at 782; see also, 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

---

[1] The three affidavits of Juli K. Ricchio submitted by the government are: 1) Affidavit in Support of Verified Complaint for Civil Forfeiture In Rem of Approximately $659,990.83 in United States Currency in TD Ameritrade Account Ending in Number 0920 Held in the Name of John K Perry [Ricchio Aff. I] [attached to the verified complaint as Exhibit A]; 2) Affidavit in Support of Seizure Warrant [Ricchio Aff. II] [attached to verified complaint as Exhibit B]; and 3) Affidavit of Juli K. Ricchio in Support of Government's Response to Claimant John K Perry's Motion to Dismiss [Ricchio Aff. III].

- 4 -

Procedure § 1351 t 226-27 (2nd ed. Supp. 2001). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts present in the record." Purdue Research Foundation, 338 F.3d at 782 (quoting Nelson v. Park Industries, Inc., 717 F.2d 1120, 1123 [7th Cir. 1983]).

In a challenge to venue, the plaintiff has the burden of establishing by a preponderance of the evidence that venue is proper in the chosen forum. United States v. Ochoa, 229 F.3d 631, 636 (7th Cir. 2000); United States v. Sax, 39 F.3d 1380 (7th Cir.1994). In considering a motion to dismiss for improper venue, the court must resolve any factual conflicts in the plaintiff's favor and accept as true all uncontroverted allegations. Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987); Budget Rent A Car Corp. v. Crescent Ace Hardware, 2003 U.S. Dist. LEXIS 12084 *16 (N.D. Ill. 2003); see also, Reed v. Brae Railcar Management, Inc., 727 F. Supp 376, 377 n.1 (N.D. Ill. 1989). "For crimes that occur in more than one state or district, venue is constitutionally and statutorily proper in any district in which part of the crime was committed." Ochoa, 229 F.3d at 636; see also, Sax, 39 F.3d at 1390.

Section 1355(b)(1)(A) of Title 28 United States Code provides that a forfeiture action may be brought "in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." As noted, the government asserts that the claimant was part of a conspiracy, along with Tom Buske and Milt Morris, and that overt acts in furtherance of the conspiracy occurred in this district.

A brief review of conspiracy law is helpful to a resolution of this motion. "A conspiracy is a 'combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.'" United States v. Martinez, 937 F.2d 299, 303 (7th Cir. 1991) (citations omitted). The essential elements of a conspiracy are: 1) an

- 5 -

agreement to accomplish an illegal objective against the United States, 2) one or more overt acts in furtherance of illegal purpose and 3) intent to commit the substantive offense. United States v. Humphrey, 34 F.3d 551, 555 (7th Cir. 1994). The crime of conspiracy focuses on agreements, not groups. United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir. 1991).

When a conspiracy is charged, the traditional rule is that such conspiracy may be tried in any district in which an overt act of the conspiracy occurred. Ochoa, 229 F.3d at 636. In United States v. Rodriguez-Moreno, 526 U.S. 275, 281-82 (1999), the Supreme Court reaffirmed that "where a crime consists of distinct parts which have different localities, the whole may be tried where any part can be proved to have been done." (quoting United States v. Lombardo, 241 U.S. 73, 77 (1916). Thus, where a conspiracy is charged, venue is proper against the defendant in the district where a "co-conspirator carried out overt acts even though there was no evidence that the defendant had entered that district or that the conspiracy was formed there." Rodriguez - Moreno, 526 U.S. at 281-82 (quoting Hyde v. United States, 225 U.S. 347, 356-57 (1912).

To be a member of a conspiracy, "a person must know of the agreement and must intend to join it." Id. at 1390 (citations omitted). However, a person need not know or participate in every detail of the conspiracy or know all of the conspiracy's members – a conspiracy may have a small core of people with whom other conspirators act to achieve the conspiracy's goal. United States v. Sophie, 900 F.2d 1064, 1080-81 (7th Cir. 1990); United States v. Curry, 977 F.2d 1042, 1053 (7th Cir. 1992) ("It is clear that participants in a conspiracy need not know all the other members or participate in every aspect of the conspiracy."). A single conspiracy exists if "there is 'one overall agreement among various parties to perform different functions in order to carry out the objectives of the conspiracy.'"

United States v. Paiz, 905 F.2d 1014, 1020 (7th Cir. 1990) (quoting United States v. Sababu, 891 F.2d 1308 [7th Cir. 1989]) (other citations omitted); see also, United States v. Varelli, 407 F.2d 735, 742 (7th Cir. 1969). ("If there is one overall agreement among the parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among the parties constitutes a single conspiracy.").

To determine whether a single conspiracy or multiple conspiracies existed, the court must consider the scope of the agreement or goal. United States v. Whaley, 830 F.2d 1469, 1474 (7th Cir. 1987); see Blumenthal v. United States, 332 U.S. 539, 558 (1947). The government maintains that the conspiracy charged in this case is a "hub and spoke" conspiracy. A "hub and spoke" conspiracy is "an arrangement in which a core conspirator . . . moves from 'spoke to spoke directing the functions of the conspiracy.'" United States v. Bustamante, 493 F.3d 879, 885 (7th Cir. 2007) (citing United States v. Chandler, 388 F.3d 796, 807 [11th Cir. 2004]).

As the court in Bustamante explained: "For a hub and spoke conspiracy to function as a single unit, a rim must connect the spokes together, for otherwise the conspiracy is not one but many. Bustamante, 493 F.2d at 885. To show that a conspirator on one spoke of a hub-and-spoke conspiracy joined the overall conspiracy, the government must show that the conspirator was aware of the existence of other participants on other "spokes" and did something in furtherance of the single, illegal enterprise. Id. Thus, the government must establish the conspirators "became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." Blumenthal, 332 U.S. at 558.

In this case, the affidavit in support of the seizure warrant states that Buske obtained inflated payments for trucking services from S.C. Johnson and Ford Motor Company of Dearborn, Michigan, by conspiring with their transportation managers, Morris and the claimant, respectively. (Ricchio Aff. II, ¶ 6). The claimant and Morris each knowingly approved false and inflated invoices which Buske then submitted to their respective employers. In exchange, Buske paid kickbacks to the two transportation managers.[2] (Ricchio Aff. II, ¶¶ 5-6).

In each of these situations, Buske followed essentially the same method for directing kickbacks to the transportation managers and had them each set up a limited liability corporation (LLC) whose ostensible purpose was to provide consulting services to a Buske company. (Ricchio Aff. III, ¶ 11]). According to Special Agent Ricchio, the primary purpose of the limited liability companies was to receive kickback payments from Buske. Buske served as the hub of the conspiracy and the Buske-Perry arm of the conspiracy involved a similar pattern of kickback arrangements as the Buske-Morris arm of the conspiracy. (Ricchio Aff. III, ¶ 11). In addition to using LLCs, Buske and Morris and Buske and Perry agreed to allocate a certain amount of the fraudulent proceeds to cover taxes due on the kickbacks and agreed to divide the remaining proceeds according to similar formulas.

Special Agent Ricchio further avers that after the claimant retired from Ford Motor Company, he became general manager of the Buske trucking firm, SPD-1, in St. Louis, Missouri. (Ricchio Aff. ¶ 15). At that time, SPD-1 performed trucking services for Ford. The claimant served as SPD-1's general manager while Morris was still employed by S.C. Johnson

---

[2]According to the Affidavit of Juli K. Ricchio filed in opposition to the claimant's motion to dismiss, the government has discovered that a transportation manager in a third company located in Tampa, Florida also had received kickbacks from Buske. (Ricchio Aff. III, ¶ 10).

- 8 -

and continued to participate in the conspiracy. Morris was fired by S.C. Johnson on October 19, 2004, months after the claimant began his employment with SPD-1. (Ricchio Aff. III, ¶ 21).

Special Agent Ricchio also avers that in his position as general manager of SPD-1, the claimant "was in a position to know that the conspiracy that he had joined involved other co-conspirators beyond just Buske and himself." (Ricchio Aff. III, ¶ 18). Agent Ricchio further avers that during the course of the conspiracy, but before the claimant joined SPD-1, "D.S." was involved in the conspiracy to overbill S.C. Johnson and personally obtained substantial amounts of cash for Buske which Buske then used to make cash kickbacks to both Morris and the claimant. (Ricchio Aff. III, ¶ 20).

As general manager, the claimant worked with an individual, D.S., who had intimate knowledge of the conspiracy to overbill Ford and who appeared to have knowledge of the conspiracy to overbill S.C. Johnson. (Ricchio Aff. III ¶ 20). D.S. participated directly in the Buske-Perry arm of the conspiracy to overbill Ford and participated in the Buske-Morris arm of the conspiracy at least by obtaining the cash that Buske used to pay kickbacks to Morris and the claimant. (Ricchio Aff. III, ¶ 22).

Tom Moore, an SPD-1 employee, stated that he and another employee, identified as Dave Seib, who worked in the St. Louis office, created false invoices to defraud Ford. (Ricchio Aff. II, ¶ 29). The claimant approved the false and inflated invoices and allowed SPD-1 to submit these invoices for payment. Buske then kicked back some of the proceeds to the claimant. (Ricchio Aff. II, ¶ 29). According to Moore, those kickbacks included monthly payments that Buske made to the claimant, as well as a house Buske bought for the claimant in Breckenridge, Colorado. (Ricchio Aff. II, ¶ 29).

- 9 -

A review of bank records between September 2004 and December 2004 showed that while the claimant was SPD-1's general manager, Buske paid $18,000.00 per month to the claimant's LLC, Poplar Enterprises. (Ricchio Aff. III, ¶ 17). These checks were paid from the account of Buske Intermodal, another Buske trucking company, which was the same account used to make kickback payments to Morris. (Ricchio Aff. III, ¶ 17).

According to Special Agent Ricchio, the actions of Buske and the claimant following Morris' firing by S.C. Johnson on October 18, 2004, provide additional evidence that the claimant had specific knowledge of Morris' involvement in the conspiracy, at least as of that date. The claimant's ex-wife[3] told Special Agent Ricchio that her husband had been involved in a fraud scheme with Buske since about the spring of 2001 and that after October 2004, Buske told the claimant that Buske no longer wanted his name on any paperwork associated with the claimant. (Ricchio Aff. III, ¶ 24). She further advised that after October 2004, Buske stopped making cash payments to the claimant and started paying the claimant only by checks made payable to the claimant's LLC, Poplar Enterprises. (Ricchio Aff. III, ¶ 25). Agent Ricchio avers that bank records show that beginning in 2005, Buske made payments to Poplar Enterprises from a different Buske entity, TMT Properties, rather than from the Buske Intermodal account previously used to fund kickback payments to the claimant and Morris. (Ricchio Aff., ¶ 26).

As noted, in deciding a motion to dismiss for lack of jurisdiction based on the parties written submissions, the plaintiff needs only to make a prima facie case of jurisdiction and is entitled to resolution in its favor of all disputes involving the relevant facts in the record. See

---

[3]Tamara K. Perry spoke with Special Agent Ricchio in September 2006. She had been recently divorced from the claimant at that time. See Ricchio Aff. II, ¶ 27.

Purdue Research Foundation, 338 F.3d at 782.  Here, applying this standard, the court concludes that the government has presented sufficient facts to establish the existence of a "hub and spoke" conspiracy involving Buske, Morris and the claimant.  Therefore the government has established a prima facie case of jurisdiction.  The affidavits of Agent Ricchio also establish that some of the overt acts in furtherance of the conspiracy occurred in the Eastern District of Wisconsin.  Thus, venue is proper in this district.  See Rodriguez-Moreno, 526 U.S. at 281-82.  Accordingly, for the reasons stated herein, the defendant's motion to dismiss this action for lack of jurisdiction will be denied.

## **MOTION TO STAY**

The government moves to stay this civil forfeiture action pursuant to 18 U.S.C. § 981(g) pending the resolution of a related criminal investigation and any criminal prosecution of the claimant.  Title 18 United States Code §981(g) states: "Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the government to conduct a related criminal investigation or the prosecution of a related criminal case."  In support of its motion, the government states that there is an ongoing criminal investigation involving the claimant and that civil discovery will adversely affect the government's ability to conduct this investigation and potentially prosecute any criminal case that may be brought against the claimant.

Based on the representations of the government and the court's review of the affidavits submitted in this action, the court finds that there is good cause for the requested stay pursuant to 18 U.S.C. §981(g).  Therefore, this civil forfeiture proceeding will be stayed pending the resolution of the related criminal investigation and any criminal prosecution of the claimant.

- 11 -

Case 2:07-cv-00264-PJG   Filed 03/20/08   Page 11 of 12   Document 32

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that claimant John K. Perry's motion to dismiss for lack of jurisdiction be and hereby is **denied**. (Docket # 22).

**IT IS FURTHER ORDERED** that the government's motion for a stay of this case be and hereby is **granted**. This civil forfeiture action is stayed pending the resolution of the related criminal investigation and any criminal prosecution of the claimant, John K. Perry. (Docket #17).

**IT IS FURTHER ORDERED** that the clerk of court shall close this case for statistical purposes.

Dated at Milwaukee, Wisconsin this 20th day of March, 2008.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge